## 73664. THE STATE v. OLIVER.
### (357 SE2d 889)

SOGNIER, Judge.

The State appeals from the trial court's grant of Oliver's motion to suppress.

Evidence disclosed that Oliver leased his residence from Chris Lightfoot, the owner of several properties in Cherokee County. About thirty days prior to the search and seizure involved here, Lightfoot notified Oliver that he should make a list of any repairs or maintenance needed at his residence, as Lightfoot and a maintenance crew would be coming around in about a month to make any necessary repairs. On the afternoon of January 8, 1986 Lightfoot and his crew went to Oliver's residence; Oliver was not at home and Lightfoot let himself in with his own keys, as he kept keys to all properties he owned. In the course of making repairs Lightfoot went to the master bedroom and saw two sawed-off shotguns lying on the floor by a mattress. The maintenance men made the repairs listed by Oliver and Lightfoot went through the house checking for any other problems. One bedroom door was locked, and after picking the lock, Lightfoot opened the door and saw a large pile of marijuana on the floor. According to Lightfoot, "[t]here were drying ovens and paraphernalia all over the place." Lightfoot had also observed paraphernalia on the breakfast table, and in checking for other maintenance problems had opened kitchen cabinets and found what appeared to be more drugs. He also opened the refrigerator and there appeared to be drugs in the refrigerator compartment. Lightfoot then called the sheriff's office and Officer Oliver Maloney came to the residence in response to Lightfoot's call. About thirty or forty minutes later, Sergeant T. O. Carroll of the Cherokee County Sheriff's Office also arrived. Neither officer had a search warrant. Lightfoot pointed out the various items he had observed and they were seized by Sergeant Carroll. At the time he was notified of Lightfoot's call, Sergeant Carroll was in the CID office in Canton, Georgia, and knew before he departed that he was going to search for drugs and other contraband. Sergeant Carroll testified that there was no reason he could not have obtained a search warrant before going to Oliver's residence, but he made no effort to do so.

The State argues that no warrant was necessary to search Oliver's residence because Lightfoot, as owner of the property, had authority to consent to the search of Oliver's residence. We do not agree. "The authority which justifies the third-party consent does not rest upon the law of property, . . . but rests rather on *mutual use* of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the *co-inhabitants* has the right to permit the inspection in his own right and that

the others have assumed the risk that one of their number might permit the common area to be searched." (Emphasis supplied.) *United States v. Matlock*, 415 U. S. 164, 171, n. 7 (94 SC 988, 39 LE2d 242). Lightfoot did not have mutual use of the property with Oliver, nor was he a co-inhabitant of the residence. In fact, Lightfoot testified that under the terms of his lease to Oliver, Lightfoot had no authority to enter the premises in Oliver's absence. Nor does the fact that the officers believed in good faith that Lightfoot had authority to consent to their search make their search and seizure without a warrant lawful. "Law enforcement officers carry the burden when determining whether a third party has authority to consent to a warrantless search of another person's property. See OCGA § 17-5-30 (b). An officer's belief that a third party has authority to consent to the search of another person's property should not only be based on information previously obtained in his investigation, but should also be based on the facts and circumstances existent at the time of the search. This is true particularly where there are no exigent circumstances which authorize bypassing the Constitutional safeguard of obtaining a warrant. See generally *Chapman v. United States*, 365 U. S. 610, 615 [81 SC 776, 5 LE2d 828]." *Browning v. State*, 176 Ga. App. 420, 423 (1) (336 SE2d 41) (1985). In the instant case the officers made no effort whatsoever to determine if Lightfoot had authority to consent to the search of Oliver's residence, and the search was not based on any information obtained previously in their own investigation. Also, as in *Chapman*, supra, no reason was offered for not obtaining a search warrant, and no exigent circumstances existed necessitating a warrantless search. No suspect was fleeing; the search was of permanent premises, not a movable vehicle; and no evidence of contraband was threatened with removal or destruction, since Oliver was not at home when Lightfoot first entered the premises or at any other time thereafter while the search was being conducted. Certainly, if it was deemed necessary to guard the premises until a warrant was obtained, Officer Maloney could have guarded the premises and prevented anyone from entering until Sergeant Carroll obtained a warrant.

We are aware that the Supreme Court of the United States and other federal courts have made an exception to the exclusionary rule when police officers rely in good faith upon warrants issued by a detached and neutral magistrate. *United States v. Leon*, 468 U. S. 897 (104 SC 3405, 82 LE2d 677); *United States v. Butler*, 763 F2d 11 (1st Cir. 1985); *United States v. Fama*, 758 F2d 834 (2nd Cir. 1985). However, those cases are inapposite to the facts of the instant case, because here the police were not acting in good faith in reliance on a warrant issued by a detached and neutral magistrate; rather, they had no warrant and made no effort to obtain one.

A trial court's decision on questions of fact and credibility of wit-

nesses at a suppression hearing must be accepted unless clearly erroneous. *Pittman v. State*, 162 Ga. App. 51, 52 (2) (289 SE2d 531) (1982). We find no error here, because a landlord cannot validly consent to the search of his tenant's quarters. Daniel, W., Ga. Criminal Trial Practice (1985 ed.), § 4-27; *Chapman*, supra. Since the landlord's consent to search was not valid, it follows that the warrantless search of Oliver's residence and seizure of items found therein were unlawful. *Browning*, supra.

*Judgment affirmed. McMurray, P. J., and Beasley, J., concur.*

DECIDED MAY 27, 1987.

*Rafe Banks III, District Attorney, Wallace W. Rogers, Jr., Assistant District Attorney*, for appellant.
*George J. Thomas II*, for appellee.