## A94A0538. FORD v. THE STATE.
(447 SE2d 334)

BIRDSONG, Presiding Judge.

Johnny Christopher Ford appeals his conviction for trafficking in cocaine, enumerating the denial of his motion to suppress the large quantity of cocaine found in the bedroom he occupied in his sister's apartment. Appellant's sister called police after overhearing a telephone conversation by appellant indicating he dealt in drugs, and she gave consent to search the apartment. Ford contends his bedroom was not a common area over which his sister had control or access, that he paid rent for the use of the apartment, and that he had a reasonable expectation of privacy in it and did not assume the risk that his sister would consent to a search of it, under *United States v. Matlock*, 415 U. S. 164, 171 (94 SC 988, 39 LE2d 242), as quoted and relied on by *State v. Stewart*, 191 Ga. App. 750 (382 SE2d 677) and *State v. Oliver*, 183 Ga. App. 92 (357 SE2d 889). Appellant also relies on *Davis v. State*, 262 Ga. 578, 581, fn. 3 (422 SE2d 546), where in affirming our decision at 202 Ga. App. 629 (414 SE2d 902) the court nevertheless said: "No expectation of privacy is more reasonable than that which one has in one's bedroom."

Appellant's sister was lessee of the apartment and appellant had been staying there for only about a week. Although appellant contends he paid rent to his sister, the State's evidence shows that when she consented to the search she denied that appellant paid rent. Her testimony at trial on this issue was in her brother's favor. *Held*:

1. At a suppression hearing involving a third party's consent to search, the State has the burden to prove not only that consent was voluntary but that the third party had authority over, and other sufficient relationship to, the premises sought to be inspected. *United States v. Matlock*, supra, as quoted in Stewart, supra, and *Oliver*, supra at 93.

A trial court's decision on fact issues and credibility of witnesses at a suppression hearing must be accepted unless clearly erroneous. Id. at 94. The evidence construed in favor of the ruling below shows either that appellant did not pay rent or that if the money he paid her was "questionably" rent, it was not such as destroyed the sister's control and authority of her entire apartment and gave him an actual expectation of privacy in one of the bedrooms. At the hearing on motion to suppress, Detective Ortiz testified that he went to appellant's sister's apartment after she called the police to report her brother selling crack cocaine; Ortiz testified that he asked permission to search and she freely gave it, that she told him appellant had been living in her apartment about a week and that appellant did not pay her any money to stay there, and that she could go anywhere in the house because it was her house and she was the sole lessee. Appel-

lant's sister testified that she did not remember such questions, and that appellant paid her $25 or $30 for "bills, to help with the rent." She also testified that since he was her brother, "it wouldn't matter" whether she went in his room, that he never told her not to go in his room, that she went to his room to wash his clothes, and that she assumed her consent to search referred to her whole apartment. The trial court found there was "an extremely informal relationship regarding the rent, and I'm not so sure [it's been established that he paid rent]. . . . [T]hey were in and out of the place on [an] informal basis. His room wasn't secured. . . . If you just believe a portion of Detective Ortiz' statement, it would indicate that at least there was no objection to him going into that room while the defendant was standing there. The sister said she expected when she signed [the consent to search] that they would go into the whole place. . . . [I]t's questionable as to whether [the money he gave her] was for food or lights, or just [to] help out, or whether he was renting a particular part of that apartment that gave him some exclusive dominion. . . . Apparently he may have given her some money just to help out with expenses. But whether or not it was rent . . . I don't think [has] been fully established. And I don't think that there has been a sufficient . . . showing . . . that it was a particular rent of a particular room that he had an expectation of privacy in. And I [find] that she had a right to allow them to make the search, and that search would include the entire premises."

Viewing the evidence in favor of the trial court's rulings, and accepting his findings as to the evidence (id.), we must conclude that appellant's sister had sufficient authority and control to consent to a search of her entire apartment. According to the trial court's findings of fact, she did not give up control and authority of her apartment merely by allowing appellant to stay in one of its bedrooms and accepting money from him, and she did not give up her right to object to his use of her home for illegal purposes.

We see no material difference in this case and *Howard v. State*, 207 Ga. App. 125 (427 SE2d 96), where the mother, as head of her household, had control and authority of her house sufficient to enable her to consent to a valid search of her son's bedroom. See also *Montgomery v. State*, 155 Ga. App. 423 (270 SE2d 825).

The dissent would have it that if a guest gives money to his host, the guest acquires an expectation of privacy which destroys her control of her home. The dissent's view of appellant's "rent" would create a society where every person is held hostage, as it were, to any crime a guest commits, if he gave her money. This is a dangerous proposal. We protect "[t]he right of the people to be secure in *their* [premises] against *unreasonable* searches" (emphasis supplied) (Ga. Const. 1983, Art. I, Sec. I, Par. XIII), but no Georgia court has ever

held so liberal a view as promoted by the dissent. Possibly if this ungrateful guest had kept dismembered bodies in his room rather than drugs, the dissent would not take such a liberal view of the rights he got merely by giving money to his host, and such a dim view of her right to control her home. The question is not whether a guest gives his host money but whether he had a reasonable expectation of privacy which would render *unreasonable* a search consented to by the host. The trial court concluded that whatever the purpose of the money, appellant did not have a reasonable expectation of privacy and the host's consent to search included her entire premises. It counts for something that *she* did not consider any of her house to be so exclusively "his" as to remove her right to consent to a search. Neither did the trial court under all the facts. The "law of paying rent" proposed by the dissent does not change the facts into a question of law, and is not the law of this state.

2. Moreover, if there be any doubt as to the actual extent of appellant's sister's control of her entire apartment, appellant had no *legitimate* or *reasonable* expectation of privacy in conducting criminal business in his sister's home. The Fourth Amendment protects only those who have *reasonable* expectation of privacy in the premises searched. "A subjective expectation of privacy is legitimate if it is ' "one that society is prepared to recognize as 'reasonable.' " ' [Cit.]" *Minnesota v. Olson*, 495 U. S. 91, 95-96 (110 SC 1684, 109 LE2d 85). Society does not regard a cocaine-selling operation as reasonable or legitimate. A guest's reasonable expectation of privacy in his host's house is based on the notion "that hosts will more likely than not respect the privacy interests of their guests." Id. at 99. That principle obviously does not apply when the host chooses not to respect her guest's "privacy" in regard to illegal acts. Appellant's sister was the lessee and was legally in control of her apartment. If appellant gave her money, she obviously did not accept it with knowledge and permission that he would use the premises to engage in criminal activity. She did not give him the privacy to sell drugs and he had no *reasonable* or *legitimate* expectation in privacy to sell drugs in her apartment. She did not view appellant's drug activities in her house, or his expectation of privacy, as reasonable or legitimate. That is why she called the police. Appellant's expectation of privacy was unreasonable per se.

3. Finally, we conclude that the facts available to the police at the time of the search justified one of reasonable caution in the belief that the consenting party (appellant's sister) had authority of the premises. See *State v. Stewart*, 203 Ga. App. 829, 830 (418 SE2d 110), relying on *Illinois v. Rodriguez*, 497 U. S. 177 (110 SC 2793, 111 LE2d 148), wherein the U. S. Supreme Court held that a warrantless search based on unauthorized consent "could nonetheless be upheld if

the law enforcement officer conducting the search *reasonably* (albeit erroneously) believed the consent given was valid. [Cit.]" *Stewart*, supra at 203 Ga. App. 829-830. (*State v. Stewart*, supra at 191 Ga. App. 705, relied on by appellant, was the first appeal in that case; we remanded the case for reconsideration under *Illinois v. Rodriguez*, supra.)

In *Davis v. State*, 202 Ga. App. 629, 632 (414 SE2d 902), we held that the child in that case had authority to consent to a search of his parents' home, and "[f]urthermore, the police officers acted reasonably in assuming [the child] had sufficient control over the premises . . . that he could consent to the search. [*Illinois v. Rodriguez*, supra.]" The Georgia Supreme Court held on certiorari that the child did *not* have authority to consent to a search, and therefore his consent was unauthorized and was ineffective to permit a warrantless entry. The Supreme Court found the child's lack of authority to consent to be conclusive on the issue of the legality of the search (*Davis*, supra at 262 Ga. 578), and did not consider the impact of *Illinois v. Rodriguez*; but inferentially the police could not reasonably believe the child had authority to consent to search under the facts described by the Supreme Court.

It is suggested that the Georgia Supreme Court's rejection of the United States Supreme Court's "good faith" rules in *Gary v. State*, 262 Ga. 573 (422 SE2d 426) precludes any consideration of the officer's good faith in this case. However, *Gary* outlawed consideration of good faith with regard to a search warrant which is invalid for lack of probable cause. A consent to search by a person who has authority over the premises or who, in the officer's good faith *reasonable* belief, has the authority to consent to the search, is on an entirely different footing. The Supreme Court decided *Gary* 13 days before it decided *Davis*, and with full knowledge of the significance of its ruling in *Gary*, it declined to apply the *Gary* rationale to the consent search case of *Davis*. The Supreme Court thus had the immediate opportunity to disapprove of a consent search based on the officer's good faith reasonable belief that the consenter had authority to consent to the search, in *Davis*, supra, but it did not do so because obviously when the question is authority to consent to search, a search based on an officer's good faith reasonable belief that a person who consented to the search of certain premises had authority to do so, is not offensive to any of the principles espoused by the Supreme Court in *Gary*.

In this case, the police could reasonably believe appellant's sister had full control of her premises and authority to permit the search of it, including the bedroom where appellant was staying.

*Judgment affirmed. Pope, C. J., McMurray, P. J., Beasley, P. J., Andrews, Johnson, Smith, JJ., and Senior Appellate Judge Harold R. Banke concur. Blackburn, J., dissents.*

BLACKBURN, Judge, dissenting as to Divisions 1, 2 and 3.

During the hearing on defendant's motion to suppress, the appellant's sister testified that the appellant had been living with her for approximately one week, that his bedroom was his private room, that he paid between $25 and $30 for bills and to help with the rent, and that she had not told the police anything contrary to that testimony. Thereafter, the trial court recognized that the appellant gave his sister some money, but questioned "whether it was for food or lights, or just helping out, or whether he was renting a particular part of that apartment that gave him some exclusive dominion over that."

The majority contends that the trial court's determination that based on the evidence "that [appellant's sister] had a right to allow them to make the search, and that search would include the entire premises" was a finding of fact which must be clearly erroneous before it can be reversed. The trial court's determination was, at best, a mixed finding of law and fact. The trial court clearly believed appellant's sister's testimony that appellant paid her money, the trial court merely misapplied the law in finding that the money must be specifically for rent and not for increased bills and to help with rent.

1. This case is clearly distinguishable from *Howard v. State*, 207 Ga. App. 125 (427 SE2d 96) (1993) upon which the majority bases its decision. In *Howard*, we found that no landlord-tenant relationship existed between the defendant and his mother because he "paid no part of the rent *or other expenses*." (Emphasis supplied.) 207 Ga. App. at 125. See also *Williams v. State*, 166 Ga. App. 798 (2) (305 SE2d 489) (1983). In the present case, during his first week of living with his sister appellant paid $25 to $30 for bills and rent. The trial court found the appellant's sister's testimony credible, but imposed a more stringent standard than that indicated in *Howard*, supra, and *Williams*, supra, to find a landlord/tenant relationship. Each case relied upon by the majority involves a fact situation in which the parents of the defendant consented to a search of their house in which their son lived without paying any money to the parents. See *Howard*, 207 Ga. App. 125 (1), supra; *Montgomery v. State*, 155 Ga. App. 423 (1) (270 SE2d 825) (1980). See also *Williams*, supra. The present situation is much different.

The fact that the defendant did not object to the officer's illegal search at the time, is of no consequence. A failure to object does not equal consent. The defendant did not testify, and the State has the burden of proving a *legal* search. The payment of $25 to $30 for one week for bills and rent sufficiently establishes a landlord-tenant relationship, especially when the *appellant had his own room*. Merely allowing access to one's room for laundry does nothing to obviate a landlord-tenant relationship. Therefore, the State failed to fulfill its burden of proving that it had obtained valid consent. See *State v.*

*Stewart*, 191 Ga. App. 750 (382 SE2d 677) (1989); *State v. Oliver*, 183 Ga. App. 92 (357 SE2d 889) (1987).

2. The majority's argument in Division 2 relies on its finding that appellant was a guest in his sister's apartment. However, appellant was not a "guest," but a tenant who enjoys all rights and protections provided by the United States and Georgia Constitutions. The majority concludes that because the defendant was trafficking cocaine, he had no reasonable expectations of privacy. In this case, the expectation of privacy is founded on the tenant status of defendant and is not waived by the conduct in which he engaged as a tenant. The Fourth Amendment to the United States Constitution protects the citizen's right to be free from unreasonable searches and seizures of his person and his property as determined at the time of the search, not by a subsequent determination of the defendant's conduct based upon the results of the search. See *Minnesota v. Olson*, 495 U. S. 91 (110 SC 1684, 109 LE2d 85) (1990).

3. In Division 3 the majority applies a "good-faith exception" to a warrantless search where the officer was justified in believing that the party consenting to the search had authority to do so. This exception has been recognized by the United States Supreme Court and recognized by this court. See *Illinois v. Rodriguez*, 497 U. S. 177 (110 SC 2793, 111 LE2d 148) (1990); *State v. Stewart*, 203 Ga. App. 829 (418 SE2d 110) (1992). However, the same reasons enunciated by the Georgia Supreme Court for not following the "good-faith exception" with regard to search warrants, prevent our use of a "good-faith exception" with regard to warrantless searches. *Gary v. State*, 262 Ga. 573 (422 SE2d 426) (1992).

In *Gary*, the Court determined that OCGA § 17-5-30 was the "legislature's unequivocal expression of its desire that evidence seized by means of a warrant that [was] not supported by probable cause be suppressed." 262 Ga. at 575. Similarly, OCGA § 17-5-30 (a) (1) requires the suppression of evidence obtained by an illegal search and seizure conducted without a warrant. "A valid consent eliminates the need for either probable cause or a search warrant. *Bobbitt v. State*, 195 Ga. App. 566, 567 (394 SE2d 385) (1990). *Langston v. State*, 202 Ga. App. 431, 432 (2) (414 SE2d 676) (1992)." (Citations and punctuation omitted.) *Howard*, 207 Ga. App. at 127. Therefore, a search based on invalid consent is illegal and the evidence is subject to suppression pursuant to OCGA § 17-5-30 (a) (1).

In *Gary*, the Court held "that the good-faith exception to the exclusionary rule enunciated by the U. S. Supreme Court in *United States v. Leon*, . . . is not applicable in Georgia in light of our legislatively-mandated exclusionary rule found in OCGA § 17-5-30." 262 Ga. at 577. A different result is not justified because the officers in the present case acted without warrant. Georgia law precludes the appli-

cation of the *Rodriguez* good-faith exception for warrantless searches as applied by the majority.

The majority asserts that this issue was squarely before the Georgia Supreme Court in *Davis v. State*, 262 Ga. 578 (422 SE2d 546) (1992), and the Supreme Court did not disapprove of the good-faith exception in valid consent searches. In *Davis*, the Supreme Court's decision was based on whether the ten-year-old had actual authority to consent to a search of his parent's house, not whether the police reasonably relied upon the ten-year-old's apparent authority. Id. The present issue was not before the Court in *Davis*, and there is no precedential value in the Court's failure to discuss or reach an issue.

For the foregoing reasons, the trial court's denial of Ford's motion to suppress should be reversed.

DECIDED JULY 12, 1994 —
RECONSIDERATION DENIED JULY 29, 1994 — 

*J. Robert Daniel, Elizabeth Lane*, for appellant.

*Charles H. Weston, District Attorney, Vernon R. Beinke, Howard Z. Simms, Assistant District Attorneys*, for appellee.