## A98A2333. THE STATE v. WEST.
### (514 SE2d 257)

ELDRIDGE, Judge.

Nineteen-year-old Jamie West lived rent-free with his mother and stepfather in his mother and stepfather's house. Based on a tip from a concerned citizen that West had marijuana plants in his bedroom, the police went to the house without a warrant to ask for consent to search the room. West was not at the house when the police arrived, but his mother and stepfather were there. When informed of the purpose for the officers' visit, West's mother stated "[s]he didn't want nothing in her home and if we found anything, she wanted it out." West's mother signed a consent-to-search form: "I understood it to be that it would be okay for them to search my house. . . . I didn't have any intention of him [officer] not searching." West's bedroom door was locked, so West's stepfather got the key to unlock the door. The police found marijuana plants inside the bedroom.

West was charged with possessing and manufacturing marijuana. He filed a motion to suppress the evidence of marijuana found in his room. The trial court granted the motion, finding that West's mother did not have authority to consent to a search of a locked bedroom:

> I am going to grant the motion[.] . . . In that Mr. West by locking his door had expectation of privacy and that the officer should have, after getting the consent to search the house, either waited until Mr. West appeared or gone and got a search warrant in order to search a room which had been locked by the person residing in that room.

The State appeals from the ruling. *Held*:

Permission to search may be obtained from one who "possess[es] [(a)] common authority over or [(b)] other sufficient relationship to the premises . . . sought to be inspected." *United States v. Matlock*, 415 U. S. 164, 171-172 (94 SC 988, 39 LE2d 242) (1974) ("*Matlock*"). The *Matlock* analysis, then, is two-pronged, i.e., a "common authority" prong, or a "sufficient relationship to the premises" prong.

*Matlock*, itself, involved a co-habitating couple in a bedroom rented from a third party. The *Matlock* Court examined the "common authority" of the one whose name was not on the lease to consent to a search of the rented bedroom. Such "common authority" analysis nec-

essarily involved aspects of each individual's expectation of privacy in the bedroom. Thus, factors such as "access" to and "mutual use" of the bedroom were relevant.

However, the application of *Matlock*'s prong-one "common authority" analysis to the facts of this case would be inappropriate. Instead, in this case, we examine a resident homeowner's authority to permit a search of her own home, including an adult child's bedroom which the homeowner permits the child to use for free.

> An examination of cases from other jurisdictions convinces us that it is the general rule that the voluntary consent of the head of a household to the search of premises owned or controlled by such head of the household is sufficient to authorize a search of the premises without a search warrant[.]

*Tolbert v. State*, 224 Ga. 291, 293 (161 SE2d 279) (1968). To that end:

> [E]ven if the son, living in the bosom of a family, may think of a room as "his," the overall dominance will be in his parents. . . . Given the nature of the home as a family dwelling and the fact that the mother, as owner and head of the single-family household, designated what use, if any, could be made of the premises including the bedroom in question, we think it was reasonable to recognize that the mother had the authority to permit the inspection in her own right.

(Citations and punctuation omitted.) *United States v. Peterson*, 524 F2d 167, 180-181 (4th Cir. 1975), cert. denied, 423 U. S. 1088 (96 SC 881, 47 LE2d 99) (1976).

As a resident homeowner granting consent to a search of her own home, including her adult son's rent-free bedroom, West's mother satisfies the second prong of the *Matlock* analysis in that she possesses a "sufficient relationship to the premises" sought to be inspected.[1] Accordingly, factors such as "access" to the bedroom and "mutual use" of the bedroom are not relevant inquiries. Thus, regardless of whether West locks his bedroom door and regardless of his mother's reluctance to enter the bedroom, she has the right to enter and she may assign that right, as she did in this case:

> [The mother] had control of the premises, undiminished

---

[1] See also *Howard v. State*, 207 Ga. App. 125, 126 (1) (427 SE2d 96) (1993); *Williams v. State*, 166 Ga. App. 798, 800 (2) (305 SE2d 489) (1983).

by any kind of less-than-fee interest possessed by [West]. This fact stands in contrast to the hotel or rental situations.[2] The situation strikes us as being no different, factually, than if [the mother] herself had brought the seized item, it being properly in her possession, to the authorities. They came to the home, it is true, but they obtained it by freely allowed access to the house.

(Punctuation omitted.) *United States v. Peterson*, supra at 180, citing *Maxwell v. Stephens*, 348 F2d 325 (8th Cir. 1965), cert. denied, 382 U. S. 944 (86 SC 387, 15 LE2d 353) (1965), reh. denied, 382 U. S. 1000 (86 SC 532, 15 LE2d 490) (1966).

Because West's mother had the *authority* to consent to a search of her home, including the bedroom she permitted her son to use for free, such consent was valid. The trial court's ruling to the contrary is erroneous.

*Judgment reversed. McMurray, P. J., Andrews and Blackburn, JJ., concur. Pope, P. J., concurs specially. Beasley, P. J., and Ruffin, J., dissent.*

POPE, Presiding Judge, concurring specially.

I fully concur with the majority opinion that West's mother gave valid consent to the search of the bedroom and that the trial court's ruling to the contrary must be reversed. Because the majority relies primarily on federal case law, I write separately in order to emphasize the Georgia cases on point.

A warrantless search of a residence may be authorized by the consent of any person who possesses common authority over or other sufficient relationship to the premises to be searched. [Cits.] "Common authority" is defined as: mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their own number might permit the common area to be searched. [Cit.]

(Punctuation omitted.) *Smith v. State*, 264 Ga. 87-88 (2) (441 SE2d 241) (1994).[3]

---

[2] Compare *Chapman v. United States*, 365 U. S. 610 (81 SC 776, 5 LE2d 828) (1961) (landlord cannot consent to search of house he has rented to another); *Stoner v. California*, 376 U. S. 483 (84 SC 889, 11 LE2d 856) (1964) (hotel clerk cannot consent to search of customer's room).

[3] Although I agree with the majority's conclusion and much of its analysis, I disagree

This Court has previously held that a parent, as the head of the household, has the authority to consent to the search of the room of a child who lives in the parent's home free of rent. See *Howard v. State*, 207 Ga. App. 125, 126 (1) (427 SE2d 96) (1993); *Williams v. State*, 166 Ga. App. 798, 800 (2) (305 SE2d 489) (1983); *Montgomery v. State*, 155 Ga. App. 423, 424 (1) (270 SE2d 825) (1980). In *Howard v. State*, we ruled: "it was uncontroverted that the appellant's mother was a co-owner of the premises, and there was no landlord/tenant relationship between the appellant and his parents. Accordingly, we find that she was authorized to permit the officers to conduct the search." (Citations and punctuation omitted.) *Howard v. State*, 207 Ga. App. at 126. See also *Ford v. State*, 214 Ga. App. 284 (1) (447 SE2d 334) (1994) (holding that appellant's sister, who rented an apartment and was allowing appellant to stay in a bedroom in the apartment, could consent to a search of appellant's bedroom).

In the instant case, it is true that West tried to maintain some privacy by locking his bedroom door. That fact, however, does not end the inquiry. West's attempts at privacy and the authority of his mother to consent to the search are different issues. The trial court and the dissent have incorrectly focused on West's privacy expectation in evaluating whether the search was valid. The dispositive question in this case is not merely if West tried to have privacy by locking his bedroom, but whether his mother had such authority over, or relationship to, the premises that she had the right to allow inspection of the room and that West assumed the risk that she might permit the room to be searched. See *Smith v. State*, supra. Pertinent to this inquiry are the facts that West's mother and stepfather are co-owners of the house; that there is no landlord/tenant relationship because West was allowed to stay in the house without paying rent; and that West's mother and stepfather have a key to the room. Given all the circumstances, it is clear that West's mother had sufficient authority over her own house, that she had the right to consent to a search of the room and that West assumed the risk that she might permit the room to be searched.

> [T]he voluntary consent of the head of a household to
> the search of premises owned or controlled by such head of

---

with the majority's statement that a "common authority" analysis in this case is inappropriate. As noted in both the majority and this special concurrence, a third party with "sufficient relationship" to the premises can validly consent to a search. "Common authority," or mutual use of the property by persons having joint access for most purposes, is simply one kind of "sufficient relationship" to the premises. In this case, there is evidence that West, his mother and his stepfather mutually used the house and had joint access to it. Thus, whether or not the mother had common authority over, or any other kind of sufficient relationship to, the premises is the appropriate inquiry.

the household is sufficient to authorize a search of the premises without a search warrant, and such search does not violate the constitutional prohibition against unreasonable searches and seizures.

*Tolbert v. State*, 224 Ga. 291, 293 (2) (161 SE2d 279) (1968). Because the consent to search given by West's mother was valid, the trial court's ruling to the contrary is erroneous.

BEASLEY, Presiding Judge, dissenting.

I respectfully dissent because the trial court's order does not contravene the law.

In reviewing an order on a motion to suppress evidence, three principles guide examination of the facts. One, the judge sits as the trier of facts. The findings should not be disturbed if there is any evidence to support them. Second, the trial court's resolution of questions of fact and credibility must be accepted unless clearly erroneous. Third, the appellate court must construe the evidence most favorably to the upholding of the trial court's order. *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994). These principles apply whether the trial judge validated the seizure or invalidated it. Id. We do not have authority to substitute our judgment for that of the trial court if there is a substantial basis for its decision. *Lambright v. State*, 226 Ga. App. 424 (487 SE2d 59) (1997). See *State v. Oliver*, 183 Ga. App. 92 (357 SE2d 889) (1987), a case which affirms a trial court's conclusion of invalid consent to search.

Critical here is that the court found that West's bedroom was locked, that a key had to be procured, that the household's general policy for each of the adult residents "was to keep their bedroom door locked in order to maintain the security of their possessions and to provide for each individual's privacy," and that West's mother only entered the bedroom upon obtaining permission or a request from West. These findings are supported by the following evidence in the record.

Undisputed is that the officer did not seek a search warrant because, after he consulted with his superiors and also the district attorney's office about getting one, they decided instead to go and find out who lived there and try to do "a nonchalant consent to search" to determine the accuracy of the tip. The only information he had was from an anonymous person who had reported seeing marijuana plants growing in West's bedroom. The officer was familiar with West and the house because he had been there before and knew West had been on probation. Nothing occurred when the three officers went to the home which would support probable cause to believe that marijuana was in the room or which created exigent cir-

cumstances to search without a warrant, so consent of an authorized person was essential.

The officers did not believe the Brookses would know anything about the marijuana, if it was there, and police discussion with them prior to obtaining consent bore that out. Mrs. Brooks testified that she did not know anything about the marijuana discovered by the police. She was "bumfuzzled" when the police explained why they were there. She felt that if there were any drugs in her house, she wanted them out. This all allows the inference that Mrs. Brooks did not frequent her son's room. Also inferable is that she did not feel quite free to permit entry on her own, even though she made known that she wanted any drugs in her house removed. She signed the consent form because the officer said "[t]hat he was going to search, but [she] needed to sign it."

The police learned from her that defendant had left the house a short time before to go to the store or to a friend's house or some such place and had been expected back before the police arrived. In fact, he arrived and was arrested before the police left. There was no urgency to obtain the consent of someone other than the room's occupier.

Mrs. Brooks told the officer the room was locked and that she was not sure where the key was which he had given to her. She said she had misplaced it and had not been in the room "in a while" because she could not find it and "never went in there anyway that much, but [West] gave [her] a key in case [she] needed to get in there for something." She had not been in the room for about two or three weeks and would generally go in only "sometimes . . . to clean it" or if West called her on the phone and asked her to get something, which happened only two or three times. She never went in West's room without his permission, not even to get the dirty laundry or put back the clean laundry. Most of the time he kept the door locked.

West had put the lock on his door with her permission because he had experienced some things missing from his room previously. All the occupants of the house were adults and everyone locked their rooms. According to Mrs. Brooks, "we all try to respect each other's privacy."

Mr. Brooks knew where the key was, got it from their bedroom, and unlocked the door after Mrs. Brooks signed the consent form. Although West did not pay rent as such to his mother, he did give her money "to help out" if she needed some. He did not stay at the house much of the time. But no one else stayed in that room even though others visited the residence from time to time, and only West and the Brookses had keys.

The evidence is abundantly clear that West had an objectively reasonable expectation of privacy in his bedroom, which was his

home. As the trial court said in summing up her ruling, "I don't know of any greater way that Mr. West could have been trying to protect his privacy than to have a lock on his door." The court repeated this observation in the order granting the motion: "[T]he Court cannot imagine of any greater way that the Defendant could have attempted to protect his privacy than to place a lock requiring a separate key on the door to his bedroom."

Taking into account West's expectation of privacy, what was the relationship of his mother to the room? Did she have the sort of relationship which would authorize her to consent to its search in her own right?

The United States Supreme Court has instructed that

the consent of one who possesses common authority over premises or effects is valid as against the absent nonconsenting person with whom that authority is shared. . . . [Consent to search is valid if] permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.

*United States v. Matlock*, 415 U. S. 164, 170-171 (94 SC 988, 39 LE2d 242) (1974). The Court explained what it meant by "common authority":

[It] is . . . not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

Id. at 171, fn. 7.

West's mother did not have mutual use of the property or joint access or control of it so as to have the right to permit inspection of the room in her own right. She had relinquished use and consistently over time had respected the exclusive use of the room by her adult son. Although she owned the house and her son did not pay rent as such so as to establish a landlord-tenant relationship, these facts are not determinative because "common authority" is not based on the law of property. Because the Supreme Court has made that clear, it

would not intend the law of property to govern the other category it created, i.e., "sufficient relationship" else the latter would swallow up "common authority" as defined and make it superfluous. Although Mrs. Brooks had a key, she only used it with permission of West. She had given up use and control of the room out of generosity and familial ties and further, had permitted the assurance of privacy as a matter of courtesy and her son's security.

Contrasted to the situation here is that found in *Smith v. State*, 264 Ga. 87 (2) (441 SE2d 241) (1994). The Supreme Court of Georgia held that the consent by the mother was valid because the son slept in the common area, only kept his belongings in the unlocked spare room with its standing-open door, the mother had joint access and unhindered control over the room, and there was no evidence that he paid rent or had exclusive domain over it. The court held that this authorized the trial court "to conclude that she had common authority over the room . . . and a sufficient relationship to [it] to consent to the search." (Citations omitted.) Id. at 88.

In *Peek v. State*, 239 Ga. 422, 426 (2) (238 SE2d 12) (1977), the Supreme Court avoided what it regarded as the close question of the authority of defendant's sister, lessee of the house in which he resided, to consent to search of his bedroom. We have here the difficult issue skirted there, but it is notable that the Court was unwilling to conclude that because the sister was the lessee (there was no evidence that he paid anything to her for use of the room), she had authority to consent.

Distinguishable is *Dawson v. State*, 166 Ga. App. 199 (303 SE2d 532) (1983), for there the appellant's brother, who shared the bedroom with him in the house occupied by the two of them and their grandmother, gave consent to search the bedroom where incriminating evidence was found.

Even where a tenant fails to pay rent (she was in jail and the landlord put new locks on the apartment to hold her personal property as security for past due rent), this Court held there was not an abandonment of the premises so as to authorize the landlord to give consent to search. The tenant "maintained a reasonable expectation of privacy" so that "the landlord had no authority to consent to the search" as measured by the *Matlock* test. *Browning v. State*, 176 Ga. App. 420, 422 (1) (336 SE2d 41) (1985).

Further, based on the facts related above in this case, it is not one in which the police intrusion into West's bedroom can be justified on the ground that they reasonably believed Mrs. Brooks possessed common authority over his room. The United States Supreme Court allows such in the proper circumstances. *Illinois v. Rodriguez*, 497 U. S. 177 (110 SC 2793, 111 LE2d 148) (1990). But as we recognized in *Browning*, supra at 423,

[l]aw enforcement officers carry the burden when determining whether a third party has authority to consent to a warrantless search of another person's property. See OCGA § 17-5-30 (b). An officer's belief that a third party has authority to consent to the search of another person's property should not only be based on information previously obtained in his investigation, but should also be based on the facts and circumstances existent at the time of the search. This is true particularly where there are no exigent circumstances which authorize bypassing the Constitutional safeguard of obtaining a warrant. See generally *Chapman v. United States*, 365 U. S. 610, 615 [(81 SC 776, 5 LE2d 828) (1961)].

As in *State v. Stewart*, 203 Ga. App. 829, 830 (418 SE2d 110) (1992), "the [officers] could not reasonably have believed that [Mrs. Brooks] had authority over [West's bedroom]."

Her consent, even if freely given, was an invalid key to the officers' legitimate entry. The Fourth Amendment stood in the way. The Supreme Court of Georgia has said as to a third party consent search: "No expectation of privacy is more reasonable than that which one has in one's bedroom. From there, one may exclude the whole world, including one's children, and especially the government." *Davis v. State*, 262 Ga. 578, 581, n. 3 (422 SE2d 546) (1992).

I am authorized to state that Judge Ruffin joins in this dissent.

DECIDED MARCH 19, 1999.

*Roger Queen, District Attorney, John G. Wilbanks, Jr., Assistant District Attorney*, for appellant.

*John R. Jackson*, for appellee.