**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 10, 2013**

# In the Court of Appeals of Georgia

A13A0043. AHMED v. THE STATE.

ANDREWS, Presiding Judge.

Following a joint jury trial[1] in Emanuel County, El Waleed Ahmed was convicted of possession of cocaine with intent to distribute (OCGA § 16-13-30 (b)) and possession of marijuana with intent to distribute (OCGA § 16-13-30 (j)). Ahmed appeals from the denial of his motion for new trial, challenging the denial of his motion to suppress, his motion for a directed verdict, and the sufficiency of the evidence. Discerning no error, we affirm.

Viewed in the light most favorable to the jury's verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the evidence shows that in the early morning hours of July 29, 2010, Georgia Bureau of Investigation Special Agent

---

[1] Ahmed was tried with co-defendant Anthony Vance.

Josh Alford of the East Central Georgia Drug Task Force received a request from the Chief of the Swainsboro Police Department for assistance in the department's investigation of an incident in which Ahmed had been shot at a local residence. After arriving at the residence, Agent Alford interviewed a number of witnesses and learned that a second individual, later identified as co-defendant Vance, "may have fled the scene or left the scene of the shooting . . . in a gray Malibu."

Agent Alford requested assistance from Special Agent Jason McCoy in locating Vance. Agent McCoy was aware that Ahmed and Vance usually traveled together because he had been involved in an earlier drug investigation of the two and had participated in a surveillance of their apartment. Given Alford's request and preliminary briefing as to what had transpired, McCoy and Special Agents Josh Thompson and Keith Collins proceeded to the apartment complex where McCoy believed Ahmed and Vance lived. There McCoy saw the gray Malibu he believed to be the vehicle Vance drove, and he and the other agents waited. After 45 minutes elapsed, the agents saw a man whom McCoy recognized to be Vance, leave the apartments and approach the Malibu. Upon nearly getting to the vehicle, Vance noticed McCoy's vehicle backed into a wooded area between two apartment buildings; and, by peering around a tree, confirmed that McCoy's vehicle was

2

occupied and ran. The agents pursued Vance to the rear of the apartments where they encountered a 10 to 15-foot fence. Not seeing Vance and believing that he could not have scaled the fence, the agents went directly to the apartment they knew to be the apartment Vance shared with Ahmed which was located immediately opposite the fence and knocked on the door. A young girl answered, informed the agents that Vance had gone out to his car but gave the agents permission to enter to confirm that he was not present. As the agents conducted a quick sweep of the apartment for possible hiding places, they saw what appeared to be a white powdery residue on the kitchen counter and a clear plastic baggie. Also in plain view were digital scales and a razorblade. Field tested, the powdery residue tested positive for cocaine. Given this, the agents secured the apartment, and applied for and obtained a search warrant from a magistrate judge. In the search that followed, the agents found more cocaine packaged in clear plastic sandwich bags in and on a kitchen cabinet, in a kitchen drawer, and in the apartment's locked storage room. The agents also found a small baggie of marijuana in a second kitchen drawer, as well as multiple baggies of marijuana in a plastic grocery sack in the apartment's storage room. Ahmed, who had leased the apartment, had been issued keys to the apartment and the storage room. In

total, 24.71 grams of cocaine and 48.4 grams of marijuana were seized. All was entered in evidence at trial.

1. Ahmed contends that the trial court erred in denying his motion to suppress the evidence of drugs seized in his apartment. He argues that the warrantless entry was illegal as not occasioned in hot pursuit of a suspect, thus fatally tainting the search warrant and the admissibility of the evidence seized as a result. We disagree.

We apply a de novo review to the trial court's application of the law to the facts,

> if the facts are stipulated, or if the critical facts do not depend on the testimony of witnesses who are subject to cross-examination. However, a trial court's ruling on a motion to suppress frequently involves a mixed question of fact and law. When the outcome of a motion to suppress depends on the credibility of the witnesses or on disputed facts, and the trial court has not committed an error of law, the court's ruling will not be disturbed on appeal.

(Citation omitted.) *Watson v. State*, 302 Ga. App. 619, 621 (1) (691 SE2d 378) (2010). "In considering the legality of the search of appellant's [apartment], this court can consider all relevant evidence of record, including that adduced at the suppression hearing as well as at trial." (Citations omitted.) *Jones v. State*, 187 Ga. App. 421, 422-423 (370 SE2d 784) (1988).

4

"[W]hile an officer must generally have a search warrant or consent to enter a home to make an arrest, [under the exigent circumstance exception to the warrant requirement,] an officer can enter a home to arrest a suspect when he or she has followed the suspect there in "hot pursuit." *State v. Nichols*, 225 Ga. App. 609, 610 (1) (a) (484 SE2d 507) (1997). "A suspect may not defeat an arrest which has been set in motion in a public place by escaping to a private place." (Footnote omitted.) *Anderson v. State*, 265 Ga. App. 428, 433 (4) (594 SE2d 669) (2004). Essential to hot pursuit is that "the defendant [be] aware [that] he is being pursued by the police," id., and that the officer in hot pursuit "reasonably fears the imminent destruction of evidence if entry into the residence is not immediately effected, and where an officer reasonably perceives that a suspect within the dwelling poses a risk of danger to the police or others. See *Minnesota v. Olson*, 495 U. S. 91, 100 (110 SCt 1684, 109 LE2d 85) (1990); *State v. Ealum*, 283 Ga. App. 799, 802 (643 SE2d 262) (2007)." *Love v. State*, 290 Ga. App. 486, 488 (659 SE2d 835) (2008).

At the suppression hearing, the evidence showed that McCoy telephoned Alford and asked whether Vance should be detained after observing his behavior upon seeing them at the apartments. Alford directed Vance's detention explaining that further investigation at the crime scene indicated that Vance had either been involved

5

as the shooter in what had been a home invasion or had taken the weapon which Ahmed had used therein because only the homeowner's weapon had been recovered. Given this, McCoy and the officers gave pursuit then believing Vance to be a suspect in an ongoing investigation of a home invasion in possession of a weapon used therein. Here, flight as well as probable cause to arrest Vance as a suspect in the underlying home invasion investigation combined to justify his warrantless arrest. See *State v. Bryant*, 284 Ga. App. 867, 869 (644 SE2d 871) (2007) ("Probable cause for a warrantless arrest exists where police have enough reliable information that a prudent person would believe the accused has committed a crime.") (footnote omitted.); see also *Green v. State*, 127 Ga. App. 713, 715 (194 SE2d 678) (1972) (where this Court held that flight along with other circumstances is sufficient to create probable cause for a warrantless arrest).

The evidence was sufficient to support the trial court's conclusion that the officers had probable cause to arrest Vance; that they were in hot pursuit of Vance who fled when he saw the officers; and that the officers reasonably believed that Vance fled to his apartment to escape them and avoid arrest. The trial court correctly found that exigent circumstances supported the officers' warrantless entry of the apartment. Consequently, no taint attached to the search warrant for the complete

6

search of the apartment and the seizure of the additional evidence which followed. We therefore conclude that the trial court did not err in refusing to suppress the evidence seized upon the warrantless entry of the apartment.

2. Ahmed also challenges the sufficiency of the evidence and the denial of his motion for a directed verdict.

> The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction. We view the evidence in a light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.

(Footnotes omitted.) *Thomas v. State*, 290 Ga. App. 10 (1) (658 SE2d 796) (2008)).

Ahmed leased the apartment at issue, and, as the lessee, he was issued keys to the apartment and its storage shed. That he and Vance were roommates is undisputed. Such evidence was sufficient to authorize the jury to conclude that he and Vance were in joint constructive possession of the cocaine and marijuana. *Barnes v. State*, 196 Ga. App. 797 (397 SE2d 70) (1990). The contraband seized in the apartment, later admitted at trial, was consistent with possession with intent to distribute.

7

"Although a person may not be in actual possession of a drug, if he knowingly has the power and intention at the time to exercise dominion or control over the drug, he is in constructive possession of it." (Citations omitted.) *Barnes*, supra at 798 (1). Having leased the apartment, Ahmed had access to all the contraband seized in the common areas thereof and its locked storage shed. Furthermore, the cocaine and marijuana at issue were clearly not held for personal use, both in large quantities and bagged for apparent resale. See, e.g., *Ryan v. State*, 277 Ga. App. 490, 493 (3) (627 SE2d 128) (2006).

Given the foregoing, we find that the evidence was sufficient to enable a rational trier of fact to find Ahmed guilty of the charged offenses beyond a reasonable doubt. *Jackson*, supra, 443 U. S. at 307. It follows that the trial court did not err in denying Ahmed's motion for a directed verdict. *Thomas*, supra, 290 Ga. App. at 10 (1).

*Judgment affirmed. Dillard and McMillian, JJ., concur.*