S92G0606. DAVIS v. THE STATE.
(422 SE2d 546)

SEARS-COLLINS, Justice.

The appellant, Freddie Ray Davis, was arrested and charged with violation of the Georgia Controlled Substances Act after his ten-year-old stepson, Darrin Davis ("Darrin") called 911 for emergency assistance to report the presence of drugs in the house. At the time of his arrest, the appellant was on ten years' probation under the First Offender Act (OCGA § 42-8-60 et seq.) for a 1985 drug possession conviction. The trial court denied the appellant's motion to suppress the evidence which was seized when officers responded to the child's call, found the appellant in violation of his probation, and revoked his first offender status. The Court of Appeals granted the appellant's application for discretionary appeal, and affirmed the trial court's denial of the motion to suppress. *Davis v. State,* 202 Ga. App. 629 (414 SE2d 902) (1992) (whole court decision with Sognier, C. J., McMurray, P. J., and Cooper, J., dissenting). The Court of Appeals cited, inter alia, *Peek v. State,* 239 Ga. 422 (2) (238 SE2d 12) (1977), and *Atkins v. State,* 173 Ga. App. 9 (325 SE2d 388) (1984) (affirmed with opinion by this Court in *Atkins v. State,* 254 Ga. 641 (331 SE2d 597) (1985)).

We granted a writ of certiorari for the limited purpose of considering whether, under the particular facts of this case, the consent to search given by the child in this case was valid. For the reasons that follow, we conclude that the consent given by the child was not valid.

## The Facts

At the time of the search, Darrin Davis was routinely left at home alone after school until his mother returned from work around 4:30 p.m. He had a key to the house, and was required to call his mother immediately upon getting home each day so that she would know he arrived safely. During the time he was home alone on weekday afternoons, approximately one and one-half hours, the child was not allowed to invite anyone to the house or to play outside. Darrin's mother had instructed him to call 911 if he needed help.

On January 28, 1991, Darrin arrived home from school and called his mother. While in his parents' bedroom, Darrin found what he believed to be drugs. Acting on advice he had received in drug abuse classes at school, Darrin called 911. Darrin spoke with Deputy Greg Kirby in the Douglas County Sheriff's Department and reported that drugs belonging to his mother and step-father were in his house. Darrin stated that he "would like to get them some help." Deputy Kirby dispatched Deputy Cheryl Smith to the house. Before Deputy Smith arrived, Deputy Kirby called Darrin back and told him to wait outside the house so that Deputy Smith would recognize the house when she arrived. When Deputy Smith arrived, Darrin was waiting outside the house. Darrin walked over to the driveway when the deputy drove up. Deputy Smith followed the child into the house and into the appellant's bedroom, where Darrin retrieved a mirror with white powder and a razor blade on it. Darrin also opened a nightstand drawer and pulled out a bag of marijuana and some rolling papers. Deputy Smith observed a "marijuana joint" in an ashtray next to the bed. Deputy Smith seized all of the drugs and took them to her patrol car. Another officer arrived, and all present then waited in the house for the arrival of Darrin's mother. When the mother arrived, she consented to the search of her handbag, containing additional drugs, precipitating her arrest. When the appellant arrived home, he was also arrested. Both Darrin's mother and the appellant refused to consent to a search of their home.

The appellant now contends that the Court of Appeals erred in failing to find that the appellant's rights under the Fourth Amendment to the United States Constitution were violated when the officers entered his home and his bedroom without a warrant, without probable cause, and without his consent. The appellant argues that his ten-year-old step-son lacked sufficient authority to provide the

necessary consent.

## *The Law*

1. It is well established "that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U. S. 347, 357 (88 SC 507, 19 LE2d 576) (1967); see also *Gary v. State*, 262 Ga. 573 (422 SE2d 426) (1992).[1] One such exception is when consent to search is " 'obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.' " *Atkins*, 254 Ga. at 642, quoting *United States v. Matlock*, 415 U. S. 164 (94 SC 988, 39 LE2d 242) (1974). In *Atkins*, the Court of Appeals set forth the following factors which have been examined by courts to determine if a minor's consent to search was valid:

> whether the minor lived on the premises; whether the minor had a right of access to the premises and the right to invite others thereto; whether the minor was of an age at which he or she could be expected to exercise at least minimal discretion; and whether officers acted reasonably in believing that the minor had sufficient control over the premises to give a valid consent to search. [*Atkins*, 173 Ga. App. at 11.]

The Court of Appeals then chose to "scrutinize closely . . . the minor's age, address, right of access, and right of invitation." Id. at 12. In reviewing the Court of Appeals' *Atkins* decision, this Court held that "the Court of Appeals correctly identified the factors which should be considered in making a determination as to validity [of consent]." *Atkins*, 254 Ga. at 642.

In *United States v. Matlock*, supra, the United States Supreme Court stated that "common authority" rests

> on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right

---

[1] In *Gary*, we declined to adopt the "good faith" exception to the exclusionary rule which was adopted by the United States Supreme Court in *United States v. Leon*, 468 U. S. 897 (104 SC 3405, 82 LE2d 677) (1984), holding that because the Georgia legislature has statutorily protected the right to be free from unreasonable search and seizure (OCGA § 17-5-30), "the State of Georgia has chosen to impose greater requirements upon its law enforcement officers than that required by the U. S. Constitution, as interpreted by the U. S. Supreme Court."

> to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched. [*Matlock*, 415 U. S. at 171, fn. 7.]

In the same vein as *Atkins* and *Matlock*, we judge it important to examine a child's mental maturity and his ability to understand the circumstances in which he is placed, and the consequences of his actions, when considering a child's age in relation to the child's ability to give valid consent.

We now find, applying the foregoing criteria to the facts of this case, that Darrin Davis did not have sufficient authority to validly consent to the search of his parents' home.[2] Considering the *Atkins* criteria, the child lived at the same address as the appellant, and had access to the house to the extent that he was allowed to come home there every afternoon by himself. There is no evidence, however, that the fact that the child was allowed to stay at home for one and one-half hours in the afternoon gave the child access and control of the house equal to that of the appellant, and we do not believe that the appellant assumed the risk that the child would compromise the appellant's constitutional rights by allowing the house to be searched. Also, although the child's mother had given him permission to call for emergency assistance if he needed help, the child had *no* right, absent an emergency, to invite anyone into the house while he was alone there, much less into his parents' bedroom.[3]

Most compelling, however, is Darrin's youth. The younger a child the less likely that he or she can be said to have the minimal discretion required to validly consent to a search, much less waive important constitutional rights. Judicial vigilance is especially merited when, as here, the child is quite young. Most ten-year-old children are incapable of understanding and waiving their own rights, much less those of their parents. In this case both the trial court and the Court of Appeals evaluated Darrin Davis' mental age and found that he possessed sufficient maturity to consent to the search. However, it appears to us that Darrin believed that by calling the police and reporting that his parents had drugs in the house he would achieve familial harmony, not disharmony, disruption, and the burden of the state's

---

[2] According to its brief filed after this Court granted certiorari, the state has "re-evaluated its position" on this issue. The state asserts that "in good conscience [it] cannot now ethically and honorably represent to this Court under the facts of this case, [that] it would be appropriate to rule that this ten-year-old child could give a valid consent to search his home in the absence of his parents within the meaning of the Fourth Amendment."

[3] No expectation of privacy is more reasonable than that which one has in one's bedroom. From there, one may exclude the whole world, including one's children, and especially the government.

enforcement powers. While it can be hoped that some good does come from this episode in the form of rehabilitation, such a level of immaturity and naivety in the child leads us to the inescapable conclusion that Darrin lacked that degree of mental discretion necessary for a minor to give valid consent to the search of his, and his parents' home. This child simply did not know or completely understand what the consequences of his consent would be. We cannot allow such an unknowing and uninformed surrender of constitutional rights.

2. The state argues that while the child may not have had the authority to consent to a general search of his home, what occurred at Darrin's home was not a search. Hence, the state contends, no consent was necessary. The state reasons that Darrin did have the authority to call 911 if he needed help, and to invite the responding officer into his home. After having done so in this instance, the state argues, Darrin's action of leading the officer into the appellant's bedroom to retrieve and turn over the drugs which he had already searched for and discovered privately did not constitute a search.

We agree that the child possessed the power to call for police assistance if necessary, and concomitant with that power, possessed the power to "invite" the responding officer into the house, to the extent required by the emergency. We do not question the right of law enforcement officers to respond in emergency situations. In this case, however, the officer arrived at the house and met Darrin outside of the house, in the driveway. The officer testified that it was apparent to her then that Darrin was not in any present danger, and that she did not suspect that there was anyone else in the house. At the point that the officer realized, based on her maturity and training, that there was no emergency imminently threatening Darrin's welfare in the driveway, it became incumbent upon the officer not to exceed the scope of the child's limited right of invitation. The officer's further intrusion onto the appellant's property and into the appellant's bedroom was an invasion of a reasonable expectation of privacy in an attempt to locate illegal drugs, and as such constituted a search for which either valid consent or a warrant was required.

3. Next, the state contends that even if there was no valid consent to search, warrantless entry was necessitated by exigent circumstances. First, the state argues that exigent circumstances were created by the fact that the child was in the house with drugs, which are inherently dangerous. However, the "presence of contraband without more does not give rise to exigent circumstances." *United States v. Torres*, 705 F2d 1287, 1297 (11th Cir.), *vacated and remanded on other grounds*, 718 F2d 998 (11th Cir. 1983). Additionally, as we have pointed out, Deputy Smith was with the child outside the house where, according to the deputy's testimony, there was no danger. There is no evidence that the deputy reasonably believed that the

warrantless entry was justified by "the need to protect or preserve life or avoid serious injury." *Mincey v. Arizona*, 437 U. S. 385 (98 SC 2408, 57 LE2d 290) (1978). Thus, the presence of drugs in the house was not an imminent threat to the child's welfare, and did not excuse the officer's warrantless entry.

The state further argues that exigent circumstances existed because, if the officer had left to try to secure a warrant, the appellant could have destroyed the drugs after arriving home and learning that the police had been notified. It is true that *had the appellant or the child's mother been at home at the time the search was conducted*, the prospective loss of evidence may have excused the warrantless search. See, e.g., *United States v. Tobin*, 923 F2d 1506 (11th Cir. 1991) (en banc). In this case, however, the officer testified that she did not even suspect that there was anyone in the home when she arrived and met the child in the driveway. Therefore, at the time Deputy Smith entered the house, there was no threat, actual or perceived, of the drugs being destroyed if a search was not commenced right away, and the possibility that the drugs might be destroyed does not excuse the deputy's warrantless entry.[4]

4. The state finally argues that even if this Court determines that the officer procured the evidence as the result of an unlawful search, we should nevertheless affirm the trial court's denial of the motion to suppress under the "independent source" exception or the "inevitable discovery" exception to the exclusionary rule. We disagree. Under these closely related doctrines, if the state obtains evidence by reliance upon an untainted source, or if the evidence would inevitably have been discovered lawfully, then it is not suppressed. See generally *Milner v. State*, 180 Ga. App. 97, 99 (348 SE2d 509) (1986) (evidence not suppressed where "police possessed substantial evidence prior to the warrantless search and seizure complained of . . .") and 4 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* 369-88 (1987). For either of these doctrines to apply in this case, the state would have to show this Court that evidence was obtained by some means *other than* as the result of the illegal seizure. In this case, the only information available to the authorities prior to the deputy's unlawful entry into the appellant's house was the telephone call from the ten-year-old child, in which he stated that there were drugs in the house. The only way any of the evidence eventually seized could be free from the taint of the illegal entry is if a search warrant could have been obtained on the basis of that telephone call alone. The

---

[4] The state argues that the appellant would probably have returned home before the state would be able to obtain a warrant. However, although the question is not now before this Court, the possibility that the drugs would be destroyed may have authorized a warrantless entry *after the parents had arrived home.*

state has not shown that a warrant would have been sought as part of the inevitable, routine procedure of the Douglas County Sheriff's Department following a telephone call of this sort from a ten-year-old child. Even assuming, for the sake of argument, that a warrant would have been sought, the state has not shown that Darrin provided sufficient facts "to enable [a] magistrate to make an independent determination as to whether probable cause exists for the issuance of a search warrant." *McMahon v. State*, 125 Ga. App. 491, 492 (188 SE2d 183) (1972); OCGA § 17-5-21 (a). Therefore, we cannot allow the exceptions to render meaningless the warrant requirements of the Fourth Amendment in this case.

Our decision is intended to imply no criticism of Darrin Davis or of the police, and certainly no praise for the appellant. By this opinion we simply acknowledge the right of privacy in one's home, and, under the facts present, we refuse to entrust that precious right to the judgment of the ten-year-old child in this case.

*Judgment reversed. Clarke, C. J., Bell, P. J., Benham, J., and Judge William F. Blanks concur; Hunt and Fletcher, JJ., concur in the judgment only.*

DECIDED NOVEMBER 18, 1992.

*Jay W. Bouldin,* for appellant.
*David McDade, District Attorney, William H. McClain, Assistant District Attorney,* for appellee.