## A99A1155. RAINWATER v. THE STATE.
(523 SE2d 586)

PHIPPS, Judge.

Patrick Rainwater was convicted of felony possession of marijuana after a bench trial. The marijuana was seized by police through consensual searches of the Rainwater family's yard and dwelling. Rainwater contends the consent for the searches was invalid, and he

---

appeals, challenging the trial court's denial of his motion to suppress. We must decide two issues of consent. First, did Rainwater's 15-year-old sister give valid consent to the search of the yard? Second, did Rainwater's mother give valid consent to the search of the home?

On May 29, 1998, 15-year-old Robin Rainwater called the Clayton County Police and made a complaint. Shortly after midnight, Officer Christopher Hutchens responded to the Rainwater family's home. Patrick Rainwater answered the door. Hutchens asked for Robin Rainwater. Rainwater told Hutchens that he would get his mother, Patricia Rainwater. He did, and the three of them went to Robin Rainwater's bedroom "and woke her up."

Hutchens and Robin Rainwater went outside and spoke alone. She informed Hutchens that her brother and her parents used and sold narcotics and that she had called the police because they refused to stop. She told Hutchens she had taken a small amount of marijuana from the house and placed it outside in the drain area of a flower bed so police would believe her. She told him to go and look for himself. He did, and in the drain of the flower bed next to the house, he found one clear plastic bag of marijuana. She told him that more marijuana was inside the house.

Hutchens then confronted Rainwater and his mother with the bag of marijuana. Rainwater said it was his. He was arrested, and Hutchens told Mrs. Rainwater that he wanted to search the house. She asked Hutchens what her options were. Hutchens explained that, because of the marijuana that he had found in the yard and what her daughter had told him about more in the house, he believed there was a basis to search the home and she could consent or he would get a search warrant. If he had to get a search warrant, he told her, everyone in the house would be detained outside while the warrant was obtained. She consented and signed a "Permission to Search" form. In part through directions given by Rainwater himself, more than six ounces of marijuana were found in various places in the house.

When reviewing a trial court's order on a motion to suppress, we construe the evidence most favorably to upholding the trial court's findings and judgments.[1] "[A]ny of the co-inhabitants [of a premises] has the right to permit [an] inspection in his own right[,] and . . . the others have assumed the risk that one of their number might permit the common area to be searched."[2]

Minors are not prevented from giving consent. Instead, their capacity becomes a factor which is considered on a case-by-case basis

---

[1] *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994); *State v. Wright*, 224 Ga. App. 753, 754 (482 SE2d 441) (1997).

[2] *United States v. Matlock*, 415 U. S. 164, 171, n. 7 (94 SC 988, 39 LE2d 242) (1974).

with other factors relevant to the extent of their control over the area searched.[3] In *Davis v. State*, the Supreme Court of Georgia "judge[d] it important to examine a child's mental maturity and his ability to understand the circumstances in which he is placed, and the consequences of his actions, when considering a child's age in relation to the child's ability to give valid consent."[4] Other considerations include:

> whether the minor lived on the premises; whether the minor had a right of access to the premises and the right to invite others thereto; whether the minor was of an age at which he or she could be expected to exercise at least minimal discretion; and whether officers acted reasonably in believing that the minor had sufficient control over the premises to give a valid consent to search.[5]

Robin Rainwater resided on the premises with no apparent limitations on her access to common areas. She was two months from her sixteenth birthday and therefore at an age where she could be expected to exercise at least minimal discretion.[6] A sufficient level of maturity and control was demonstrated when she called the police to the house and when her mother allowed her to confer independently with the officer. Also, she demonstrated an appreciation of the consequences of a police search. Unlike the ten-year-old child in *Davis* who called the police because he wanted to get help for his parents, Robin Rainwater called the police because she was exasperated with drug use and distribution in her home. She called the police only after she had asked her family members to stop illicit drug activity and they had refused. These facts show that she possessed a sufficient degree of discretion to give valid consent to the search of the yard.

As to the search of the home, Patricia Rainwater's consent is not invalidated because Hutchens represented he could get a search warrant and the occupants of the house would be detained while he did. Hutchens did not misrepresent the likelihood of getting a search warrant.[7] Based on Robin Rainwater's tip that her family members pos-

---

[3] See *Davis v. State*, 262 Ga. 578, 580-581 (1) (422 SE2d 546) (1992); *Atkins v. State*, 173 Ga. App. 9, 10-11 (2) (325 SE2d 388) (1984), aff'd, 254 Ga. 641 (331 SE2d 597) (1985).

[4] 262 Ga. at 581.

[5] Id. at 580, quoting *Atkins*, supra at 11.

[6] See *Rajappa v. State*, 200 Ga. App. 372, 374 (408 SE2d 163) (1991) (Where 15-year-old daughter of defendant answered the door and admitted police to search for defendant, who was found in the apartment, we noted, "at age 15, [defendant's daughter] was at an age at which she could be expected to exercise at least minimal discretion.").

[7] See *Solomon v. State*, 236 Ga. App. 778, 780 (2) (513 SE2d 520) (1999) ("[W]hen an officer represents to an accused that a warrant to search will be obtained if consent is refused, and does not have probable cause to secure the warrant, then the accused's consent

sessed illegal drugs in the house, which was corroborated by the marijuana found outside, and Patrick Rainwater's acknowledgment of ownership of it, there was probable cause to believe illegal drugs were present in the house.

Further, detaining the occupants outside would have been a reasonable measure to prevent the destruction or removal of drugs from the house. It was not advanced as a ploy to circumvent the requirement for a search warrant.[8] Patricia Rainwater's consent was valid.

Because Rainwater's 15-year-old sister gave valid consent to search the yard and his mother gave valid consent to search the house, the trial court did not err in denying Rainwater's motion to suppress.

*Judgment affirmed. Pope, P. J., and Eldridge, J., concur.*

DECIDED OCTOBER 15, 1999 — 

*Lee Sexton*, for appellant.
*Robert E. Keller, District Attorney, Albert B. Collier, Clifford A. Sticher, Assistant District Attorneys*, for appellee.

---

is invalid.") (punctuation omitted); *Darby v. State*, 216 Ga. App. 781, 783 (2) (455 SE2d 850) (1995) (reversed because officer represented search warrant would be obtained if consent refused, but officer did not have probable cause).

[8] Compare *Murphy v. State*, 230 Ga. App. 365, 368 (1) (496 SE2d 512) (1998) (reversed where officers who did not have probable cause to search defendant obtained his consent by telling him he would be detained while they applied for a search warrant).