A02A2449. WALCZAK v. THE STATE.
(575 SE2d 906)

ELDRIDGE, Judge.

Following a bench trial on stipulated facts adduced at a hearing on a motion to suppress, the State Court of Fayette County found Robert Walczak guilty of driving under the influence of drugs — less safe driver, and failure to yield the right of way. Walczak appeals his conviction, challenging both the denial of his motion to suppress and the sufficiency of the evidence supporting his conviction for DUI — less safe driver. Because the trial court properly denied the motion to suppress and the evidence is sufficient to support the verdict, we affirm.

---

[8] *Moon v. State,* 252 Ga. App. 796, 798 (2) (557 SE2d 442) (2001).
[9] *Holloway v. State,* 245 Ga. App. 510, 512 (2) (b) (537 SE2d 708) (2000).

1. Walczak first claims error in the trial court's denial of his motion to suppress the results of chemical testing.

> When reviewing a trial court's decision on a motion to suppress, this court's responsibility is to ensure that there was a substantial basis for the decision. The evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts are adopted unless they are clearly erroneous. Further, since the trial court sits as the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them.[1]

Viewed in such light, the record shows that Officer V. Roman was dispatched to an "accident with injuries" at the corner of Peachtree Parkway and Fountainhead in Peachtree City, which accident occurred after Walczak made a left turn in front of a vehicle traveling northbound on Peachtree Parkway. When Roman arrived, she observed Walczak's vehicle off the road, with its front end crumpled and the door of the car smashed in. The other driver's car was overturned and was lying on its side with the front windshield smashed in. The driver of the other vehicle was in an ambulance when Roman arrived; the officer was told by emergency medical personnel that the driver may have broken bones; he was removed on a stretcher to keep him immobile, with his head strapped down and bracing collars for his neck and back. Walczak, too, was transported to the hospital by ambulance.

Based upon her observations at the scene and what she had been told, Roman believed the collision involved serious injuries so as to require implied consent rights be read and chemical testing be done pursuant to OCGA § 40-5-55 (a). She arrived at the hospital and read the implied consent rights to Walczak, who refused chemical testing; members of Walczak's family were in the hospital room with him. The officer then left Walczak and located the other driver; she read the implied consent rights to him, and he agreed to chemical testing.

Before departing the hospital, Roman returned to Walczak and asked him if he was sure he wished to refuse testing. Walczak then volunteered the information that he had been at a party where people were smoking marijuana, and he was worried that he might have inhaled some, thereby altering any chemical test. The officer gave Walczak *Miranda*[2] warnings, and, as Roman testified at the motion

---

[1] (Punctuation and footnote omitted.) *Hill v. State*, 252 Ga. App. 473 (556 SE2d 545) (2001).

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

to suppress, "He [(Walczak)] told me about the party. He also told me that he had some Ecstasy probably a week prior to this accident."

Because of Walczak's statements, Officer Roman reread the implied consent rights for the purpose of a DUI investigation. Roman testified at the motion to suppress that "I told him that based on what he was telling me, I wanted to take blood and urine for the possibility that he was driving under the influence. I explained that to him after I read the *Miranda* rights." Following the second reading of the implied consent rights, Walczak's family urged him to take the test, and he then agreed to chemical testing. Roman testified that, at the time Walczak agreed to chemical testing, he knew he was under suspicion for DUI.

This Court has held that chemical test results are inadmissible when the implied consent warnings given before the test give the defendant "inaccurate, misleading, and/or inapplicable information," so that the defendant cannot make an informed choice regarding submitting to or refusing the State-administered test.[3] Here, Walczak's agreement to chemical testing was given only after he was told that such testing was to be done on suspicion of DUI, and the implied consent rights were reread for that purpose. Accordingly, Walczak was not misled or misinformed as to the basis upon which Officer Roman ultimately sought chemical testing and the purpose for which it was to be used. The record supports the trial court's conclusion that Walczak knew at the time the implied consent rights were reread that the test was being requested because he was under suspicion for DUI; that prosecution for DUI was possible, depending on the results of the test; and that, with such knowledge, Walczak consented to chemical testing.[4] "As some evidence exists supporting the trial court's finding of fact, we cannot disturb it."[5]

Relying on this Court's decision in *Pilkenton v. State*,[6] Walczak argues that he was misled with regard to his implied consent rights because he was first told that he was required to submit to chemical testing because the accident involved "serious injury"; Walczak argues by brief that, "There was no evidence of any sort at the scene of the accident" of serious injury as defined by OCGA § 40-5-55 (c), i.e., "a fractured bone, severe burns, disfigurement, dismemberment, partial or total loss of sight or hearing, or loss of consciousness."[7]

---

[3] *State v. Leviner*, 213 Ga. App. 99, 103 (3) (e) (443 SE2d 688) (1994).

[4] *Morrissette v. State*, 229 Ga. App. 420, 423 (2) (a) (494 SE2d 8) (1997).

[5] (Citation omitted.) *Hayes v. State*, 249 Ga. App. 857, 864 (5) (549 SE2d 813) (2001).

[6] 254 Ga. App. 127 (1) (561 SE2d 462) (2002).

[7] We reject Walczak's contention that the evidence at the scene did not support Officer Roman's good faith belief that the collision resulted in "serious injury," making the reading of the implied consent rights on such basis reasonable, if ultimately incorrect. A review of the photographic exhibits before this Court not only supports the notion that the collision

However, *Pilkenton v. State*, supra, is clearly distinguishable on the facts. In *Pilkenton*, the defendant was misinformed that the accident involved "serious injury" per OCGA § 40-5-55 (a) and (c), and the defendant *agreed* to testing on that incorrect basis. In this case, Walczak *refused* testing on the incorrect basis that the accident involved "serious injury." His agreement to testing came only after he was properly informed of an appropriate purpose for chemical testing under the facts of this case, i.e., suspicion of DUI, and Walczak was reread the implied consent rights for that reason.

Walczak also directs our attention to his mother's testimony at the motion to suppress and to his own, both of which contradict Officer Roman's testimony that she reread the implied consent rights before Walczak agreed to testing on suspicion of DUI. However, inconsistencies in testimony go to the credibility of the witnesses and,

> the credibility of the witnesses and the weight to be accorded their testimony rest with the trier of fact, who is under no obligation to believe a witness, even in the absence of contradictory testimony. The factfinder may accept part of a witness' testimony and reject another part, and in the absence of evidence of record demanding a finding contrary to the judge's determination, the appellate court will not reverse the ruling sustaining a motion to suppress.[8]

The trial court in this case made specific inquiry of Officer Roman with regard to her rereading of the implied consent rights. Her answers support the fact that the implied consent rights were properly read "a second time" before Walczak agreed to testing on suspicion of DUI. Accordingly, we cannot find that the trial court's denial of the motion to suppress was clearly erroneous.

2. Walczak challenges the sufficiency of the evidence supporting his conviction for driving under the influence of drugs — less safe driver. While Walczak does not contest that there was evidence that he was driving under the influence of drugs, he argues that there was no evidence from which to find he was rendered a less safe driver as a result of DUI.

> Evidence as to the manner of driving . . . may be taken into account where there is evidence that the defendant [is DUI]

---

involved "serious injury" as defined by OCGA § 40-5-55 (c), but renders it miraculous that such injury did not occur.

[8] (Citation and punctuation omitted.) *Anderson v. State*, 267 Ga. 116, 118-119 (2) (475 SE2d 629) (1996).

for the purpose of determining whether or not his manner of driving shows him to have been affected by the intoxicant to the extent that he drives less safely and carefully than he might otherwise have done.[9]

In that regard, evidence that, on a clear day, at 2:00 in the afternoon, on a wide four-lane divided highway, with nothing to obscure visibility, Walczak made a left turn in front of an oncoming vehicle so that a collision occurred is evidence sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Walczak was rendered a less safe driver as a result of DUI.[10]

*Judgment affirmed. Smith, C. J., and Ellington, J., concur.*

DECIDED JANUARY 9, 2003.

*Joseph J. Saia*, for appellant.

*Steven L. Harris, Solicitor-General, Lura H. Landis, Assistant Solicitor-General*, for appellee.

---

[9] (Citation and punctuation omitted.) *Gentry v. State*, 236 Ga. App. 820, 822 (1) (513 SE2d 528) (1999).

[10] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).