A04A1062. THE STATE v. McKINNEY.
(601 SE2d 777)

ELLINGTON, Judge.

In May 2002, the State indicted Charles W. McKinney on charges of trafficking in methamphetamine. The State appeals from the grant of McKinney's motion to suppress evidence obtained from his home when he was not present. For the following reasons, we vacate the trial court's order and remand this case for further proceedings consistent with this opinion.

The evidence presented at the motion hearing showed the following facts. McKinney and his ex-wife had a fourteen-year-old son who lived with McKinney for about seven months. During March 2002, McKinney and his son lived in McKinney's girlfriend's residence ("the residence"). On the morning of March 31, McKinney was in jail in another county, having been arrested on a charge unrelated to this case. At around noon that day, McKinney's ex-wife and her fiancé went to the residence to help the teenager get his belongings and move back in with her. The ex-wife had never been to the residence and did not have McKinney's permission to enter. In fact, it appears that neither McKinney nor his girlfriend were even aware that the ex-wife was at the residence or that McKinney's son was moving out.

According to McKinney's ex-wife, she was wandering around the house looking for her son's belongings when she went into McKinney's bedroom and saw a black bag on the nightstand near the far wall. By walking around the bed and standing over the top of the black bag, she could see a "baggie" inside. She thought the baggie might contain drugs. She invited her fiancé into McKinney's bedroom to look at the bag and he agreed it might be drugs. At this point, the teenager had not been in McKinney's bedroom and had not seen any drugs. Without telling the teenager about the drugs or otherwise discussing the situation with him, McKinney's ex-wife called 911.

When a Newton County police officer arrived at the house, the teenager was in his room packing up his belongings. The officer talked very briefly with McKinney's ex-wife, then to the teenager; the officer never spoke to the teenager alone. The officer found out that the teenager lived there and had a key to the residence, but never

asked the teenager whether he was allowed to go into his father's bedroom, whether he was allowed to invite guests over, or whether he was allowed to stay there alone. Even though the officer knew that McKinney's ex-wife did not live at the residence, he still asked both the ex-wife and teenager for permission to go into the residence. According to the officer, the ex-wife consented and the teenager "never indicated [anything] other than sure."

McKinney's ex-wife led the officer to the bedroom while the teenager stayed in the living room. The officer testified that he observed a black shaving kit on the nightstand with a plastic baggie sitting next to it, and he determined that the contents of the baggie "possibly may be some type of drug." Although the ex-wife testified that the officer picked up the baggie, the officer denied touching the baggie at any time. The officer left the bedroom and contacted an officer with the East Metro Drug team, who came out to the residence. The drug team officer arrived and talked briefly with the responding officer, the teenager, and McKinney's ex-wife. As with the responding officer, this drug team officer testified that the plastic baggie of drugs in the bedroom was sitting *beside* the black bag, not inside it, as the ex-wife claimed she had found it. He also testified that he was unable to see the black bag or baggie until he leaned inside McKinney's bedroom.

In granting McKinney's motion to suppress, the trial court found that the evidence did not show that the teenager ever expressly authorized a search. It found that McKinney's ex-wife was essentially controlling the teenager, and that his authorization of the search — upon which the officers relied — appeared to be solely the result of her influence. The trial court also found that the ex-wife could not authorize the search because she lacked authority to be "rambling" around the residence, especially in McKinney's bedroom.[1] Further, the court determined that there were no exigent circumstances which prevented the officers from obtaining a search warrant based upon the ex-wife's observations. Based upon the totality of the circumstances, the court found the seizure of the drugs was unauthorized.

1. On appeal, the State contends the trial court erred in granting the motion to suppress, arguing that the uncontested evidence showed the teenager consented to the officers' entry into the residence and

---

[1] Notably, the court found that the ex-wife's motivations and actions were suspicious and indicated that she lacked credibility. For example, the court found that it was possible the ex-wife tampered with the drugs before the officer arrived so that the drugs would be in plain sight when the officer entered the bedroom. As the State correctly argued to the trial court, however, whether the ex-wife tampered with the evidence was a jury issue for trial and was not relevant to McKinney's motion to suppress.

that the court's finding otherwise is clearly erroneous.[2] Based upon the hearing transcript, it does appear that the teenager gave the officers permission to enter the residence. But the inquiry does not stop there. It is still necessary to determine whether the teenager's consent extended to his father's bedroom and whether his consent was valid.

> It is well established that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions. One such exception is when consent to search is obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected. In *Atkins*[ *v. State*],[3] the Court of Appeals set forth the following factors which have been examined by courts to determine if a minor's consent to search was valid: whether the minor lived on the premises; whether the minor had a right of access to the premises and the right to invite others thereto; whether the minor was of an age at which he or she could be expected to exercise at least minimal discretion; and whether officers acted reasonably in believing that the minor had sufficient control over the premises to give a valid consent to search.... [Further, i]n *United States v. Matlock*,[4] the United States Supreme Court stated that "common authority" rests on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

(Citations, punctuation and footnote omitted.) *Davis v. State*, 262 Ga. 578, 580-581 (1) (422 SE2d 546) (1992). It is "important to examine a child's mental maturity and his ability to understand the circumstances in which he is placed, and the consequences of his actions,

---

[2] See *Ford v. State*, 214 Ga. App. 284 (1) (447 SE2d 334) (1994) (a trial court's findings of fact and determination of credibility on a motion to suppress will be accepted unless clearly erroneous).

[3] 173 Ga. App. 9 (325 SE2d 388) (1984), aff'd with opinion by the Supreme Court of Georgia, 254 Ga. 641 (331 SE2d 597) (1985).

[4] 415 U. S. 164, 172, n. 7 (94 SC 988, 39 LE2d 242) (1974).

when considering a child's age in relation to the child's ability to give valid consent." Id. at 581 (1).

In this case, the record does not show that the trial court considered the relevant factors, as outlined below, in determining whether the officers obtained a valid consent to search McKinney's bedroom. Further, this Court cannot decide the issues on the record before us, even though the evidence is uncontested, because the trial court explicitly found that some of the testimony upon which the State relies lacked credibility.[5] Therefore, we vacate the court's order and remand this case for a reconsideration of McKinney's motion to suppress. On remand, the court is instructed to address the factors outlined in *Davis*, supra, and *Atkins*, supra, and to determine whether the teenager possessed common authority over his father's bedroom sufficient to permit him to consent to a search of this area,[6] and whether the teenager's consent was valid. See *Ford v. State*, 214 Ga. App. at 284 (1) ("[a]t a suppression hearing involving a third party's consent to search, the State has the burden to prove not only that consent was voluntary but that the third party had authority over, and other sufficient relationship to, the premises sought to be inspected") (citations omitted); *Rajappa v. State*, 200 Ga. App. 372, 374 (3) (408 SE2d 163) (1991) (whether a minor's consent to search is valid must be determined on a case-by-case basis).

2. Although the State argued during the hearing that the seizure should be allowed because there was no "search" of McKinney's bedroom, but simply the officers' retrieval of drugs that had already been discovered by McKinney's ex-wife, the Supreme Court of Georgia has rejected this distinction when presented with similar circumstances. "The officer's . . . intrusion onto the appellant's property and into the appellant's bedroom was an invasion of a reasonable expectation of privacy in an attempt to locate illegal drugs, and as such constituted a search for which either valid consent or a warrant was

---

[5] See *Anderson v. State*, 267 Ga. 116, 118-119 (2) (475 SE2d 629) (1996) ("the credibility of the witnesses and the weight to be accorded their testimony rest with the trier of fact, who is under no obligation to believe a witness, even in the absence of contradictory testimony. The fact finder may accept part of a witness' testimony and reject another part, and in the absence of evidence of record demanding a finding contrary to the judge's determination, the appellate court will not reverse the ruling sustaining a motion to suppress.") (citation and punctuation omitted).

[6] See *Davis v. State*, 262 Ga. at 581 (1), n. 3 (addressing the issue of common authority and whether parents assumed the risk that their child would authorize a search of their bedroom. The Court also recognized that "[n]o expectation of privacy is more reasonable than that which one has in one's bedroom. From there, one may exclude the whole world, including one's children, and especially the government.").

required." *Davis v. State*, 262 Ga. at 582 (2). Accordingly, to the extent that this argument may be raised again following remand, we find it lacks merit.

*Judgment vacated and case remanded with direction. Andrews, P. J., and Miller, J., concur.*

DECIDED JULY 1, 2004.

*W. Kendall Wynne, District Attorney, Robert B. Faircloth, Assistant District Attorney*, for appellant.

*LaMalva & Oeland, David A. LaMalva*, for appellee.