## A05A1330. THE STATE v. McKINNEY.
(622 SE2d 429)

BERNES, Judge.

A Newton County grand jury indicted Charles W. McKinney for the offense of trafficking in methamphetamine (OCGA § 16-13-31 (e)). The trial court subsequently entered an order granting McKinney's motion to suppress the drugs seized from his bedroom. In the first appeal of this case, we held that the record was unclear as to whether the trial court had considered the correct factors in determining whether the police had obtained the valid consent of McKinney's 14-year-old son to search McKinney's bedroom. See *State v. McKinney*, 268 Ga. App. 296, 299 (1) (601 SE2d 777) (2004). As such, we remanded the case for further consideration, and on remand, the trial court again entered an order granting the motion to suppress. The State now appeals from that order. Finding no error, we affirm.

> We must abide by the following three principles when reviewing a trial court's order granting a motion to suppress evidence: First, the judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Footnote omitted.) *State v. Ellison*, 271 Ga. App. 898 (1) (611 SE2d 129) (2005).

Viewed in this light, the evidence shows that an officer with the Newton County Sheriff's Department responded to a 911 call made by McKinney's ex-wife reporting the presence of drugs in the mobile home where McKinney lived with his girlfriend and his 14-year-old teenage son.[1] Earlier that day at approximately 5:00 a.m., McKinney's teenage son had called his mother (McKinney's ex-wife) from a gas station pay phone, informing her that he had been riding four-wheelers with his father earlier that morning but had become separated from him. The teenager informed his mother that while his father and he were riding four-wheelers, some police officers had

---

[1] Additional facts pertaining to this appeal are set out in our previous decision. See *McKinney*, 268 Ga. App. at 296-297.

approached, leading his father to instruct him to flee into the woods, where he remained for several hours until he called his mother from the pay phone.

McKinney's ex-wife and her fiancé subsequently picked up her teenage son from the gas station and took him back to the mobile home where he lived so that he could gather his belongings and move back in with his mother. McKinney's ex-wife and her fiancé had never before been to the mobile home. While assisting her son in gathering his belongings, McKinney's ex-wife went into the bedroom of McKinney and his girlfriend. She discovered drugs in the bedroom, leading her to call the police.

When the officer arrived at the mobile home, he learned that McKinney and his girlfriend were currently incarcerated in another county on unrelated drug charges. Only McKinney's ex-wife, her fiancé, and the teenager were present at the scene. The officer spoke briefly with McKinney's ex-wife and her teenage son, and he learned that the teenager lived at the mobile home with McKinney and his girlfriend and that the drugs were located in his father's bedroom.

Although he had learned that only the teenager resided there, the officer asked both the ex-wife and the teenage son while they were in each other's presence if he could enter the mobile home in order to seize the drugs. The officer obtained an affirmative response from both of them. The officer then proceeded to the bedroom shared by McKinney and his girlfriend. Upon entering the bedroom, the officer located a substance in a clear plastic bag later identified as methamphetamine. The officer inspected the drugs and called an officer from the drug enforcement unit, who came to the scene and retained the drugs for further testing.

McKinney moved to suppress the evidence seized from his bedroom on the ground that there was no valid consent given for the search. The trial court granted the motion, concluding that McKinney's teenage son never expressly consented to a search of the mobile home; that McKinney's ex-wife lacked authority to consent to the search; and that there were no exigent circumstances preventing the officer from obtaining a search warrant. The State appealed, arguing that the teenager had validly consented to the search. We concluded that although the record showed that the teenager had affirmatively consented to the officer entering the residence, that did not end the inquiry. See *McKinney*, 268 Ga. App. at 297-299 (1). Rather, the trial court needed to more specifically determine whether the teenager had validly consented to the search of the defendant's *bedroom* by considering the factors articulated by this Court in *Atkins v. State*, 173 Ga. App. 9, 10-12 (2) (325 SE2d 388) (1984), and later endorsed by the Supreme Court of Georgia in *Davis v. State*, 262 Ga. 578, 580-582 (1) (422 SE2d 546) (1992). See *McKinney*, 268 Ga. App. at 298-299 (1).

Because the record did not reflect whether the trial court had made this specific inquiry using the *Atkins* factors, we remanded for further proceedings. See id.

On remand, the trial court conducted a hearing and heard oral argument from the parties. Thereafter, the trial court entered an order again granting McKinney's motion to suppress. In its order, the trial court stated that it had reconsidered the evidence submitted by the parties at the original suppression hearing in light of the factors set forth in *Atkins* and *Davis*, as instructed by this Court. The trial court went on to find that "the State failed to establish, with credible evidence, that the child in this case possessed common authority over the father's bedroom such that the child could permit a search," and that "[g]iven the officer's minimal interaction with the child, it was unreasonable for the officer to believe the child possessed common authority over the father's bedroom." Additionally, the trial court found that even if the teenage son had common authority over his father's bedroom such that he could have given his valid consent to a search of that area, he nevertheless did not give his "free, knowing, and voluntary consent" under the circumstances of this case.

1. The State argues that the trial court erred in granting the motion to suppress because the evidence evaluated in light of the factors set forth in *Atkins* required the trial court to conclude that McKinney's teenage son possessed common authority over his father's bedroom. We cannot agree. "[I]n the absence of evidence of record *demanding* a finding contrary to the judge's determination, the appellate court will not reverse the ruling sustaining a motion to suppress." (Citations and punctuation omitted; emphasis supplied.) *State v. Aguirre*, 229 Ga. App. 736, 737 (494 SE2d 576) (1997). Given this deferential standard of review, we are constrained to uphold the trial court's grant of the motion.

The general rule is that the Fourth Amendment to the United States Constitution prohibits the search of a home without a warrant. *State v. Randolph*, 278 Ga. 614 (604 SE2d 835) (2004). "The prohibition does not apply, however, to situations in which voluntary consent has been obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises." (Citations omitted.) Id. When the "third party" is a minor, we have developed a specialized framework under which four primary factors are considered:

> In cases where the person consenting to the search has not attained the age of eighteen, the courts have measured the minor's control over the area searched by examining [(1)] whether the minor lived on the premises; [(2)] whether the minor had a right of access to the premises and the right to

invite others thereto; [(3)] whether the minor was of an age at which he or she could be expected to exercise at least minimal discretion; and [(4)] whether officers acted reasonably in believing that the minor had sufficient control over the premises to give a valid consent to search.

(Citations omitted.) *Atkins*, 173 Ga. App. at 11 (2). See also *Davis*, 262 Ga. at 580-581 (1). Whether a minor has authority to consent to a search in light of these four factors is a fact-intensive inquiry that must be resolved on a case-by-case basis. *Rajappa v. State*, 200 Ga. App. 372, 374 (3) (408 SE2d 163) (1991).

"The State bears the burden of proving that both the search and seizure of evidence were lawful. OCGA § 17-5-30 (b)." *Pledger v. State*, 257 Ga. App. 794, 796 (572 SE2d 348) (2002). Based on the evidence presented at the suppression hearing, we cannot say that the evidence *demanded* the conclusion that McKinney's teenage son had authority to authorize a search of his father's bedroom under the *Atkins* factors.

It is true that the teenager lived in the mobile home where the search was conducted (the first *Atkins* factor), and, at age 14, arguably could be expected to exercise at least minimal discretion (the third *Atkins* factor).[2] However, that does not end the inquiry. Even if the evidence would have supported the conclusion that the teenager had authority to consent to a search of the common areas of the mobile home, there was a lack of evidence in the record affirmatively showing that he had the more particularized authority to allow a search of his father's bedroom. Compare *Rainwater v. State*, 240 Ga. App. 370, 372-373 (523 SE2d 586) (1999) (teenager validly consented to search of yard), and *Rajappa*, 200 Ga. App. at 374 (3) (teenager validly consented to officer's entering apartment living room and common bathroom), with *Davis*, 262 Ga. at 581-582 (1) (minor did not validly consent to search of parents' bedroom).

In this regard, the evidence shows that while the teenager lived in his father's residence, he did not sleep in or use his father's bedroom for any purpose, and he did not have any belongings in the room at any point. He never went into his father's bedroom and never invited other people into it. Indeed, the teenager did not enter his father's bedroom at any point on the day of the search, before or while the police were present. In light of such evidence, the trial court was

---

[2] See, e.g., *Rainwater v. State*, 240 Ga. App. 370, 372 (523 SE2d 586) (1999) (15-year-old validly consented to search); *Rajappa*, 200 Ga. App. at 374 (3) (same). See also *Doyle v. State*, 633 P2d 306, 309 (I) (Alaska Ct. App. 1981) (minor, who was between the ages of 11 and 14, gave valid consent to search premises); *State v. Folkens*, 281 NW2d 1, 4 (I) (Iowa 1979) (minor, who was 14 years old, validly consented to search of bedroom).

entitled to conclude that the second *Atkins* factor was not met in this case because McKinney's teenage son did not have "access and control of the [bedroom] equal to that of" McKinney and his girlfriend. *Davis*, 262 Ga. at 581 (1).

The fact that McKinney's teenage son had a key to the mobile home, could invite others over to the home, could come and go as he pleased from the home, and was often left unsupervised does not demand the opposite conclusion. Compare *Murphy v. State*, 355 S2d 1153, 1155 (Ala. Crim. App. 1978) (minor's consent to search of parent's bedroom was valid when crime at issue was committed against the minor in the bedroom); *State v. Folkens*, 281 NW2d 1, 4 (I) (Iowa 1979) (minor's consent to search of parent's bedroom was valid when minor had been sleeping in the bedroom); *Frierson v. State*, 839 SW2d 841, 851-852 (Texas Ct. App. 1992) (minor's consent to search master bedroom was valid when minor gave consent in presence of parent who lived at the home, who did not object).[3]

Furthermore, the trial court's finding that the responding officer had minimal interaction with the teenager is supported by the record. After briefly questioning McKinney's ex-wife and teenage son, the officer learned that the teenager lived at the home and had a key to the residence. The officer did not ask the teenager whether he was allowed to enter his father's bedroom, whether he had free access to the home, or whether he was restricted from entering particular rooms. The officer made no inquiry concerning the teenager's access to or control over the mobile home. Based on these facts, the trial court did not err in finding that "given the officer's minimal interaction with the [teenager]," the officer lacked a reasonable belief that the teenager could validly consent to a search of McKinney's bedroom, and, therefore, that the fourth *Atkins* factor had not been met. See *Saavedra v. State*, 622 S2d 952, 959 (Fla. 1993) (concluding that officer did not ask a sufficient number of questions of the minor to "have reasonably determined that the boy . . . had common authority over the house").

For these reasons, we conclude that there was at least some evidence to support the trial court's determination that a warrantless search of McKinney's bedroom was not authorized under the *Atkins*

---

[3] Although McKinney's teenage son never invited any of his friends into his father's bedroom and did not have any of his belongings stored there, the teenager testified that he felt it would have been fine for him to take his friends into his father's bedroom if hypothetically it was ever necessary to do so. In light of the other evidence in the record indicating that the teenager lacked joint access and control over his father's bedroom, the trial court was entitled to accord little weight to this particular testimony. "On a motion to suppress, the credibility of witnesses, resolution of any conflict or inconsistency, and weight to be accorded testimony are solely the province of the [trial] judge." (Punctuation and footnote omitted.) *King v. State*, 267 Ga. App. 546, 548 (600 SE2d 647) (2004).

factors. Nevertheless, the State argues in the alternative that the teenage son had authority to consent to entry into the mobile home and its common areas, and that once the responding officer was in the common hallway of the home, he spotted the drugs in plain view through the doorway of McKinney's bedroom. Thus, the State argues that the officer did not need to obtain consent to enter McKinney's bedroom without a warrant because the "plain view" doctrine permitted a warrantless entry into that specific room. See *Galbreath v. State*, 213 Ga. App. 80, 82 (2) (443 SE2d 664) (1994) ("[I]t has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence.") (citation and punctuation omitted).

However, there was a factual dispute as to whether the drugs in McKinney's bedroom were in plain view from the doorway. It is clear that the trial court resolved the contradictory testimony in favor of determining that the drugs were not in plain view.

> [T]he credibility of the witnesses and the weight to be accorded their testimony rest with the trier of fact, who is under no obligation to believe a witness, even in the absence of contradictory testimony. The factfinder may accept part of a witness' testimony and reject another part, and in the absence of evidence of record demanding a finding contrary to the judge's determination, the appellate court will not reverse the ruling sustaining a motion to suppress.

(Footnote omitted.) *Walczak v. State*, 259 Ga. App. 140, 143 (1) (575 SE2d 906) (2003). Therefore, this Court defers to the trial court's determination on this factual issue, since the record does not demand a contrary result.

Because there was evidence that the officer's search of McKinney's bedroom was not authorized under the *Atkins* factors, the officer's seizure of the drugs found in the bedroom likewise was unauthorized. Accordingly, the trial court's decision to grant McKinney's motion to suppress was not clearly erroneous.

2. The State also argues that the trial court erred in finding that the consent to search given by McKinney's teenage son was not free, knowing, or voluntary under the circumstances. In light of our decision in Division 1, we do not reach this issue.

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED OCTOBER 24, 2005.

*W. Kendall Wynne, Jr., District Attorney*, for appellant.
*LaMalva & Oeland, David A. LaMalva*, for appellee.